**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JOYCE HICKS; and STEPHEN GOLDBERGER, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>HEARST COMMUNICATIONS, INC.,<br><br>Defendant. | Case No. _____<br><br>**CLASS ACTION COMPLAINT**<br><br>(JURY TRIAL DEMANDED) |

Plaintiffs Joyce Hicks ("Plaintiff Hicks") and Stephen Goldberger ("Plaintiff Goldberger") (collectively, "Plaintiffs"), individually and on behalf of themselves and all others similarly situated, by and through their attorneys, make the following allegations pursuant to the investigation of their counsel and based upon information and belief, except as to allegations specifically pertaining to themselves and their counsel, which are based on personal knowledge.

## INTRODUCTION

1. Unsatisfied with publishing and advertising revenue alone, Hearst Communications, Inc. ("Hearst") knowingly used Plaintiffs' and the other Class members' names on subscriber mailing lists that it sold on the open market, to any member of the public willing to pay for them, including to data miners, data aggregators, data appenders, data cooperatives, list brokers, aggressive marketing companies, and various other parties. The lists Hearst publicly sold identified by name, address, and other personal attributes each of the Plaintiffs and every other Ohio subscriber to its magazine publications (including *Good Housekeeping* magazine to which Plaintiff Hicks subscribed and *Car and Driver*, *HGTV*, and *Food Network* magazines to which Plaintiff Goldberger subscribed). Hearst's public use of Plaintiffs' personas on the mailing lists that it sold and continues to sell (including in connection with the magazine subscriptions previously sold to Plaintiffs) directly violated Ohio's Right of Publicity Law, Ohio Rev. Code § 2741, *et seq.* (the "ORPL").

2. Documented evidence confirms these facts. For example, Hearst, either directly or through one or more intermediary acting on its behalf and at its direction (including through NextMark and/or one or more "list manager" and/or "list broker"), and during the time period relevant to this action, has knowingly advertised and sold to various parties the mailing list titled "HEARST CORPORATE MASTERFILE & ENHANCED Mailing List", which contains the Personal Reading Information of all 9,108,589 active U.S. subscribers to all of Hearst's various publications, including Plaintiffs and each member of the Class, at a base price of "$115.00/M [per thousand]," (i.e., 11.5 cents apiece), as shown in pertinent part in the screenshot below from list broker NextMark, Inc.'s website:



*See* **Exhibit A** hereto.

3. Hearst sells these subscriber mailing lists, on which Plaintiffs' and the Class members' names appear (along with other Personal Reading Information and the title of the

publication to which each of them subscribed), without Plaintiffs' or any other Class member's consent (written or otherwise).

4. The ORPL clearly prohibits what Hearst has done. The ORPL provides, *inter alia*, that "a person shall not use any aspect of an individual's persona for a commercial purpose . . . during the individual's lifetime" unless "the person first obtains the written consent to use the individual's persona[.]" Ohio Rev. Code § 2741.02(A)-(B). The term "persona" is defined as "an individual's name, voice, signature, photograph, image, likeness, or distinctive appearance, if any of these aspects have commercial value." *Id.* § 2741.01(A). And the ORPL defines commercial purpose as, *inter alia*, "the use of or reference to an aspect of an individual's persona . . . [o]n or in connection with a place, product, merchandise, goods, services, or other commercial activities[.]" *Id.* § 2741.01(B).

5. Thus, by using Plaintiffs' and Class members' names "on or in connection with" the mailing lists that Hearst sells on the open market – i.e., "product[s], merchandise, [or] good[s]" – without any of these individuals' written consent, Hearst has directly violated the ORPL.

6. The ORPL was enacted to recognize each Ohio resident's right of publicity. Hearst has deprived Plaintiffs and Class members of this right by surreptitiously selling mailing lists on which all Ohio-resident subscribers to its publications are identified by name, without notifying much less obtaining written consent from these individuals prior to doing so, let alone allowing them to control or choose whether and how their identities are used in this way.

7. Hearst's practices of monetizing its subscribers' names and identities for commercial purposes is not only unlawful, it is also dangerous because it allows any member of the public willing to purchase this data to target particular subscribers, including vulnerable members of society, using their identity, interests and other demographic data. For example, anyone could buy a customer list provided by Hearst that contains the names and addresses of all Hispanic women over the age of 50 who live in Toledo, Ohio, earn over $100,000 per year, belong to the Republican Party, and subscribe to *Good Housekeeping* magazine. Such a list is available for sale on the open market for approximately $201.00 per thousand subscribers listed.

8. So while Hearst profits handsomely from the use of its customers' identities in this way, it does so at the expense of its Ohio customers' statutory right of publicity. Accordingly, Plaintiffs bring this Class Action Complaint against Hearst for its nonconsensual and plainly unlawful use of their and its other Ohio customers' personas in violation of the ORPL.

## PARTIES

9. Plaintiff Hicks is a natural person and is, and during the relevant events alleged herein was, a resident of the State of Ohio. During time period relevant to this action, Plaintiff Hicks subscribed to Hearst's *Good Housekeeping* magazine while a resident of Ohio.

10. Plaintiff Goldberger is a natural person and is, and during the relevant events alleged herein was, a resident of the State of Ohio. During time period relevant to this action, Plaintiff Goldberger subscribed to Hearst's *Car and Driver*, *HGTV*, and *Food Network* magazines while a resident of Ohio.

11. Defendant Hearst Communications, Inc. is a Delaware corporation with its headquarters and principal place of business in New York, New York. Hearst is the publisher of *Bicycling*, *Car and Driver*, *Cosmopolitan*, *Country Living*, *Elle*, *Elle Decor*, *Esquire*, *Food Network Magazine*, *Harper's Bazaar*, *HGTV Magazine*, *House Beautiful*, *Marie Claire*, *Men's Health*, *Popular Mechanics*, *Prevention*, *Road & Track*, *Runner's World*, *Town and Country*, *Veranda*, *Woman's Day*, and *Women's Health* magazines, as well as its flagship publication *Good Housekeeping* magazine.

## JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest, fees, and costs, and at least one Class member is a citizen of a state different from Defendant.

13. The Court has personal jurisdiction over Hearst because Hearst maintains its corporate headquarters and principal place of business in New York, New York.

14. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Hearst is

subject to personal jurisdiction in this judicial District, because Hearst resides in this judicial District, and because a substantial part of the events giving rise to Plaintiffs' claims took place within this judicial District.

## FACTUAL BACKGROUND

### *Ohio's Right of Publicity Law*

15. Recognizing the need to protect its citizens' right of publicity, the Ohio legislature enacted the ORPL to establish as a matter of law that each resident of Ohio has the right of publicity in his or her persona, including in his or her "name."

16. Thus, the ORPL prohibits companies from, *inter alia*, publicly using a person's persona, such as their name, on or in connection with a product, good, merchandise, or service. *See*. Specifically, the ORPL provides, *inter alia*, that "a person shall not use any aspect of an individual's persona for a commercial purpose . . . during the individual's lifetime" unless "the person first obtains the written consent to use the individual's persona[.]" Ohio Rev. Code § 2741.02(A)-(B). The term "persona" is defined as "an individual's name, voice, signature, photograph, image, likeness, or distinctive appearance, if any of these aspects have commercial value." *Id.* § 2741.01(A). And the ORPL defines commercial purpose as, *inter alia*, "the use of or reference to an aspect of an individual's persona . . . [o]n or in connection with a place, product, merchandise, goods, services, or other commercial activities[.]" *Id.* § 2741.01(B).

17. Thus, by using Plaintiffs' and Class members' names "on or in connection with" the mailing lists that Hearst sells on the open market – i.e., "product[s], merchandise, [or] good[s]" – without any of these individuals' written consent, Hearst has directly violated the ORPL.

18. Despite the fact that scores of Ohio residents subscribe to Hearst's publications, Hearst disregarded its legal responsibilities to these individuals by using their statutorily protected personas without their written consent, in direct violation of the ORPL.

### *Hearst Unlawfully Sells and Offers to Sell Mailing Lists Containing its Customers' Names, Addresses, and Other Personal Reading Information*

19. Hearst maintains a vast digital database comprised of its customers' identifying

5

information and other Personal Reading Information.

20. Hearst, either directly or through one or more intermediary acting on its behalf and at its direction (including through NextMark and/or one or more "list manager" and/or "list broker"), sold and continues to sell mailing lists containing its customers' names, addresses, and other Personal Reading Information on the open market to anyone willing to pay for it, including on a regular basis to data miners, aggregators, appenders, and cooperatives, aggressive marketing companies, and other businesses. The name and address (among other information) of each subscriber appears on or in these lists, and identifies each such person as having subscribed to a particular magazine from Hearst.

21. As a result of Hearst's data compiling and sales practices, any member of the public can purchase mailing lists from Hearst. Hearst's practices of selling and offering to sell mailing lists that use its subscribers' personas (i.e., names) in this way puts consumers, especially the more vulnerable members of society, at risk of serious harm from scammers.

22. Hearst does not seek (much less obtain) its customers' prior written consent to any of these practices and its customers remain unaware that their names and personas, as well as addresses, and other Personal Reading Information and sensitive demographic details (including information identifying the particular publication to which each of them subscribed), are on or in the mailing lists that Hearst sells on the open market to any member of the public interested in purchasing them.

23. Consumers can subscribe to Hearst publications through numerous media outlets, including the Internet, telephone, or traditional mail. Regardless of how the consumer subscribes, Hearst uniformly fails to obtain written consent from—or even provide effective notice to—its customers before using their persons on or in connection with the subscriber mailing lists that it sells.

24. By and through these actions, Hearst has intentionally publicly used Plaintiffs' and numerous other Ohioans' names and persons on or in connection with products, merchandise, or goods, without any of these individuals' prior written consent, in direct violation of the ORPL.

## CLASS ACTION ALLEGATIONS

25. Plaintiffs seek to represent a class defined as:

   All Ohio residents who, at any point in the relevant statutory period, had their names appear on or in connection with a subscriber mailing list advertised for sale or sold by Hearst without written consent (the "Class").

26. Members of the Class are so numerous that their individual joinder herein is impracticable. On information and belief, members of the Class number in the millions. The precise number of Class members and their identities are unknown to Plaintiffs at this time but may be determined through discovery. Class members may be notified of the pendency of this action by mail and/or publication through the records of Defendant.

27. Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members. Common legal and factual questions include, but are not limited to: (a) whether the subscriber mailing lists that Hearst sells to the public on the open market are "product[s], merchandise, [or] good[s]" within the meaning of the ORPL; (b) whether Hearst used the Class members' "names" or "personas" "on or in connection with" such subscriber mailing lists; (c) whether Hearst obtained written consent before selling such subscriber mailing lists; and (d) whether Hearst's practices of selling such subscriber mailing lists violated the ORPL.

28. The claims of the named Plaintiffs are typical of the claims of the Class in that the named Plaintiffs and the Class all sustained damages as a result of Defendant's uniform wrongful conduct, based upon Defendant's practices of selling subscriber mailing lists identifying Plaintiffs and Class members as subscribers to particular publications by name, to anyone willing to pay.

29. Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of the Class members they seek to represent, they have retained competent counsel experienced in prosecuting class actions, and they intend to prosecute this action vigorously. The interests of Class members will be fairly and adequately protected by Plaintiffs and their counsel.

30. The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class members. Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

**CLAIM FOR RELIEF**
**Violation of the Ohio Right of Publicity Law § 2741, *et seq.***
**(By Plaintiffs on Behalf of Themselves and the Class)**

31. Plaintiffs repeat the allegations contained in the foregoing paragraphs as if fully set forth herein.

32. Plaintiffs bring this claim individually and on behalf of members of the Class against Defendant.

33. Each of the Plaintiffs is a natural living person and therefore an "individual" within the meaning of the ORPL. *See* Ohio Rev. Code. § 2741.02.

34. As a corporation in the business of publishing and selling magazine subscriptions, Hearst is a juristic "person" within the meaning of the ORPL. *See id.*

35. During the relevant time period, Plaintiffs were both Ohio residents and subscribers to one or more magazine(s) published by Hearst. Each member of the Class likewise resided in Ohio and subscribed to a Hearst publication during the relevant time period.

36. Prior to and at the time Plaintiff Hicks subscribed to *Good Housekeeping* magazine and Plaintiff Goldberger subscribed to *Car and Driver*, *HGTV*, and *Food Network* magazines, and

8

prior to and at the time Class members subscribed to Hearst publications, Hearst did not notify Plaintiffs or the members of the Class that it would use their names or other identifying attributes "on or in connection with" the subscriber mailing lists that it sells. Plaintiffs and Class members have never given Hearst authorization to do so.

37. During the relevant statutory period, Hearst, either directly or through one or more intermediary acting on its behalf and at its direction (including through NextMark and/or one or more "list manager" and/or "list broker"), knowingly advertised the sale of and sold to various members of the general public mailing lists containing Plaintiffs' Personal Reading Information (which identified Plaintiff Hicks as an individual to whom a *Good Housekeeping* subscription had been sold and Plaintiff Goldberger as an individual to whom *Car and Driver*, *HGTV*, and *Food Network* magazine subscriptions had been sold), including to data aggregators, data appenders, data cooperatives, and various other persons interested in buying it to contact Hearst subscribers, without first obtaining Plaintiffs' written consent or even giving them prior notice of its use of their names and identities in this way. Likewise, during the statutory period relevant to this action, Hearst knowingly advertised the sale of and sold to various members of the public mailing lists containing the names and addresses (among other Personal Reading Information) of all of the individuals who had subscribed to its various publications, including Plaintiffs and each member of the Class.

38. "Joyce Hicks," which Heard used on or in connection with the subscriber mailing lists that it sells, is "the actual, assumed, or clearly identifiable name or reference to [Plaintiff Hicks] that identifies [her]" as a person. Accordingly, Hearst used Plaintiff Hicks's "name" or "likeness," and thus her "persona," within the meaning of the ORPL. *See id.* § 2741.01(A), (C).

39. Likewise, "Stephen Goldberger," which Hearst used on or in connection with the subscriber mailing lists that it sells, is "the actual, assumed, or clearly identifiable name or reference to [Plaintiff Goldberger] that identifies [him]" as a person. Accordingly, Hearst used Plaintiff Goldberger's "name" or "likeness," and thus his "persona," within the meaning of the ORPL. *See id.* § 2741.01(A), (C).

40. As alleged above, Hearst knowingly used Plaintiffs' and each Class member's names or likenesses (and thus their personas) on or in connection with its products, merchandise, goods, or services and thus for "commercial purposes" within the meaning of the ORPA. *See id.* § 2741.01(b)(1).

41. Significant commercial value exists in the aspects of Plaintiffs' and Class members' names that Defendant uses on or in its products, goods, or merchandise.

42. Hearst did not request, much less obtain, any prior "written, electronic, digital, or any other verifiable means of authorization" from either of the Plaintiffs or any Class member prior to using their names or identities (i.e., personas) for commercial purposes within the meaning of the ORPL. *See id.* § 2741.01(F).

43. Accordingly, by using Plaintiffs' and each Class member's "name," "an[] aspect of [each of their] persona[,] for a commercial purpose . . . during their lifetime[s]," and while they resided in Ohio, without "written consent," Hearst directly violated the ORPL. *See id.* §§ 2741.01(A), (C), 2741.02(A)-(B).

44. Plaintiffs' injuries were suffered in Ohio. Each Class member's injury was likewise suffered in Ohio, where each such person resides.

45. Hearst knowingly and willfully used Plaintiffs' and the other Class members' names and identities without their written consent in this way. Hearst, either directly or through one or more intermediary acting on its behalf and at its direction (including through NextMark and/or one or more "list manager" and/or "list broker"), directed and oversaw both the advertising of the sale of the subject subscriber mailing lists on the open market as well as the actual sales of such subscriber lists to various third parties who purchased such lists during the time period relevant to this action. Hearst reaped significant monetary profits as a result of its sales of subscriber mailing lists on which and in which Plaintiffs' and the other Class members' names and identities appeared.

46. Plaintiffs and the members of the Class have been injured, while residing in Ohio, from the violations of their rights of publicity caused by Hearst's nonconsensual use of their names

and identities (and thus their personas) in this way.

47. On behalf of themselves and the Class, Plaintiffs seek: (1) statutory liquidated damages of between $2,500.00 and $10,000.00 per violation to themselves and each Class member pursuant to Ohio Rev. Code. §§ 2741.07(A)(1)(a)-(b) & 2741.07(A)(2); (2) an award of punitive or exemplary damages pursuant to Ohio Rev. Code. § 2741.07(A)(1)(c); (3) an injunction requiring Defendant to obtain prior written consent from Ohio customers prior to the use of their names or identities on or in the subscriber mailing lists that Hearst advertises and sells pursuant to Ohio Rev. Code. § 2741.07(D)(3); and (4) costs and reasonable attorneys' fees pursuant to Ohio Rev. Code. § 2741.07(D).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seek a judgment against Defendant as follows:

    A. For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as representatives of the Class and Plaintiffs' attorneys as Class Counsel to represent the Class;

    B. For an order declaring that Defendant's conduct as described herein violates the Ohio Right to Publicity Law, Ohio Rev. Code. § 2741, *et seq.*;

    C. For an order finding in favor of Plaintiffs and the Class on the count asserted herein;

    D. For an award of statutory liquidated damages of between $2,500.00 and $10,000.00 per violation to each of the Plaintiffs and each Class member pursuant to Ohio Rev. Code. §§ 2741.07(A)(1)(a)-(b) & 2741.07(A)(2);

    E. For an award of punitive or exemplary damages pursuant to Ohio Rev. Code. § 2741.07(A)(1)(c)

    F. For an injunction requiring Defendant to obtain prior written consent from Ohio customers prior to the use of their names or identities on or in the subscriber mailing lists that Hearst advertises and sells pursuant to Ohio Rev. Code. § 2741.07(D)(3);

G. For an order awarding Plaintiffs and the Class their reasonable costs and reasonable attorneys' fees pursuant to Ohio Rev. Code. § 2741.07(D); and

H. For prejudgment interest on all amounts awarded.

## JURY DEMAND

Plaintiffs demand a trial by jury on all causes of action and issues so triable.

Dated: November 3, 2021

Respectfully submitted,

By: /s/ Arun G. Ravindran

Arun G. Ravindran
aravindran@hedinhall.com
Frank S. Hedin*
fhedin@hedinhall.com
HEDIN HALL LLP
1395 Brickell Avenue, Suite 1140
Miami, Florida 33131
Tel: (305) 357-2107
Fax: (305) 200-8801

*Pro Hac Vice* Application Forthcoming

*Counsel for Plaintiffs and the Putative Class*